1870, (No. 4,026.) For other cases involving this patent, see Garneau v. Dozier, 102 U. S. 230; Ball v. Langles, Id. 128.]

---

BALL, The DANIEL. See Case No. 3,564.

BALLANCE, (FORSYTHE v.) See Case No. 4,951.

---

## Case No. 816.

### In re BALLARD et al.

[2 N. B. R. 250, (Quarto, 84;) 1 Chi. Leg. News, 103.]

District Court, D. Connecticut. 1868.

BANKRUPTCY — SUSPENSION OF PAYMENT OF COMMERCIAL PAPER.

[The suspension of payment of commercial paper for 14 days is prima facie evidence of fraud, and casts the burden of proof on the debtor. In the absence of explanatory proof, such suspension is to be deemed fraudulent, within the meaning of the bankruptcy act of March 2, 1867, (14 Stat. 517, c. 176.)]

[Cited in Re Hercules Mut. Life Assur. Soc., Case No. 6,402; Baldwin v. Wilder, Id. 806.]

[See Hensheimer v. Shea, Case No. 6,328; Ex parte Thompson, Id. 13,936; Ex parte Hollis, Id. 6,621; Ex parte Weikert, Id. 17,361; Ex parte Bininger, Id. 1,420; Ex parte Hall, Id. 5,920.]

In bankruptcy. The question in this case arose upon a point of law made by the counsel for the alleged bankrupts, claiming that fourteen days' suspension of payment of commercial paper by a banker, merchant, or trader, must be accompanied by actual fraud, in order to constitute an act—or even to constitute prima facie evidence of fraud—of bankruptcy, within the meaning of the law. The question was argued, and all the known cases bearing upon this point cited by George G. Sumner and William Shipman, for petitioning creditors, and by Franklin Chamberlain, for the alleged bankrupts, and the following decision and opinion filed by the judge:

SHIPMAN, District Judge. The only question before the court in the present stage of this case is, whether the respondents have committed an act of bankruptcy. A number of their creditors have duly made application to have them declared bankrupts under those clauses of the act relating to involuntary bankruptcy. In their petition the creditors allege that the respondents are merchant traders and manufacturers, and that long before the date of the petition they fraudulently stopped and refused payment of their commercial paper, and have not resumed the same within a period of fourteen days, nor at any time since. There is no dispute about the facts. It is conceded that the respondents have suspended payment of their commercial paper, and have not resumed, and that this suspension has continued without interruption much longer than fourteen days. No explanatory proof is offered by the respondents, and the question arises whether, in this state of the case, the suspension is deemed fraudulent within the meaning of the act of congress. This court, in several uncontended cases, has decided that a suspension under such circumstances was to be deemed prima facie evidence of fraud, at least sufficient to cast the burden of proof on the debtor. This is the view taken by Judge Field, of the United States district court of New Jersey, in the case of Jersey City Window Glass Co., [Case No. 7,292.] It is sufficient to say that I adhere to this view of the law. Whether I should, in a case presented, go further, and concur with the views expressed by Judge Hall in Re Wells, Jr., [Case No. 17,387,] need not now be determined. It follows that a decree declaring the respondents bankrupts must issue.

---

## Case No. 817.

### BALLARD v. EDMONSTON.

[2 Cranch, C. C. 419.][1]

Circuit Court, District of Columbia. Oct. Term, 1823.

APPRENTICE—MOTHER CANNOT BIND CHILD.

A mother cannot bind out her child as an apprentice.

[Cited in Charles v. Matlock, Case No. 2,615.]

The petition of Richard Ballard stated, that on the 9th of April, 1816, one Evan Edmonston, an infant under twenty-one years of age, by indentures signed and sealed by his mother, Sarah Edmonston, was bound to the petitioner for nine years from the 8th of June next following, to learn the trade of a tailor. That he came and served as an apprentice until about two months past, when he left the service of the petitioner, although the nine years have not yet expired, and the said Evan is still a minor, and refuses to return to his service, alleging that he is not bound by the indentures. The petitioner therefore prays that the said Evan may be brought before the court to abide such order as the court may deem just and equitable. The indenture was in the common form, but signed and sealed by the mother, and not by the son. By the 7th section of the act of Maryland of 1793, c. 45, it is provided, that, "in case the contract, whether defective in form or not, hath been partly executed, the said county or criminal court may award and compel the terms or any part of the terms to be performed by the master or mistress, or by the apprentice, as justice and equity may require; and the master or mistress of any apprentice may detain the said apprentice in his or her service, till discharged by the court aforesaid; and the said master or mistress may maintain such action against strangers, as if such apprentice had been legally bound to serve."

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Ashton, for the petitioner, contended, that under the 7th section of the act, as the contract had been so far executed, on his part, the court should order it to be completed on the part of the boy, although the indentures are defective in form. The act does not mean mere technical form of the indentures, but the invalidity of the indentures from any cause. Here the contract was, that the boy should serve the petitioner as an apprentice. The indentures were only a matter of form; and although they may be defective, the contract continues, and under that section of the law, may be enforced with such modification, or upon such terms as the court may deem just and equitable.

Mr. Coxe, contra. By the common law the infant could not bind himself, nor could the mother bind him. The act of 1793, c. 45, § 4, only authorizes the father to bind out his infant son. The mother has no such power. There were therefore no parties competent to contract, and therefore there was no contract. When a power is given by statute, all the requisites of the statute must be complied with.

THE COURT (THRUSTON, Circuit Judge, absent) decided, that there was no contract binding on the boy, and ordered him to be discharged.

---

BALLARD, (GOULD v.) See Case No. 5,-635.

BALLARD, (GROW v.) See Case No. 5,848.

BALLARD, (MARTINS v.) See Cases Nos. 9,175 and 9,176.

BALLARD, (OAKLEY v.) See Case No. 10,-393.

BALLARD, (UNITED STATES v.) See Cases Nos. 14,506, 14,507.

---

## Case No. 818.

### In re BALLOU.

[4 Ben. 135;[1] 3 N. B. R. 717, (Quarto, 177.)]

District Court, S. D. New York. May, 1870.

PRACTICE—PETITION AND BILL—LIEN—FRAUDULENT JUDGMENT.

1. A bankrupt suffered his property to be taken on legal process in favor of one of his creditors, under an execution issued on a judgment against him, the bankrupt intending thereby to give a preference to such creditor, and the creditor having reasonable cause to believe, at the time, that the bankrupt was insolvent: *Held*, that the transaction was void, under the 35th section of the bankruptcy act, [of March 2, 1867; 14 Stat. 534,] and that no valid lien was acquired in favor of the creditor by the taking under the execution.

[See In re Stevens, Case No. 13,391; Beattee v. Garden, Id. 1195; Catlin v. Hoffman, Id. 2,521; In re Davidson, Id. 3,599; Ex parte Binns, Id. 1,422; Ex parte Forsyth, Id. 4,948; Vogle v. Lathrop, Id. 16,985; Harvey v. Crane, Id. 6,178; Hood v. Karper,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Id. 6,664; Vanderhoof's Assignee v. City Bank, Id. 16,842; Warren v. Tenth Nat. Bank, Id. 17,202; Ford v. Keys, Id. 4,933; Smith v. Buchanan, Id. 13,016.]

2. The property levied upon under the execution was, under an order of the bankruptcy court, delivered to the assignee, and sold by him, subject to the determination of the court as to the validity of the lien claimed by the creditor. The assignee filed a petition, praying that such lien might be declared void. The creditor's answer prayed that it might be adjudged valid, and that the assignee might be directed to satisfy the execution out of the proceeds of the property held by him. On an objection taken by the creditor, at the hearing: *Held*, that, as the matter was brought up by petition, instead of by bill in equity, it was irregular; that both petition and answer must fall, and the proceeding be dismissed, without costs, with leave to the creditor to file a bill in equity, or bring a suit at law, as he might be advised, within thirty days.

[Cited in Barstow v. Peckham, Case No. 1,-064; In re Marter, Id. 9,143.]

[See Ex parte Bonesteel, Case No. 1,627.]

In bankruptcy.

G. A. Seixas, for assignee.

F. N. Bangs, for execution creditors.

BLATCHFORD, District Judge. On the proofs in this case, I regard it as established that the bankrupt, on the 9th of October, 1869 (the petition in bankruptcy having been filed on the 15th of October, 1869), being insolvent, suffered his property to be taken on legal process in favor of the firm of E. S. Jaffray & Co., under an execution issued on that day against him, on a judgment recovered on that day, in the marine court of the city of New York, by that firm, against him, for $486 80; that the bankrupt intended thereby to give a preference to that firm, as his creditors, they being such at the time; and that firm had reasonable cause to believe, at the time, that the bankrupt was insolvent, and that a fraud on the bankruptcy act was intended. The transaction was, therefore, void, under the 35th section of the act [of March 2, 1867; 14 Stat. 534,] and no valid lien was acquired in favor of the firm, by the taking under the execution. The petition of the assignee prays that such lien may be declared void. The answer of the firm to that petition, which answer was verified on the 17th of December, 1869, and filed on the next day, prays that the levy under the execution may be adjudged to be a valid lien, and that the assignee may be ordered to satisfy the execution out of the proceeds of the sale of the property. It appears, by the proofs, that the property levied upon under the execution was, on or about the 14th of December, 1869, under an order made by this court on that day, delivered to the assignee, the order providing that he should hold the proceeds separate from the other estate of the bankrupt, subject to the determination of this court on the petition filed by the assignee to ascertain the validity of the lien claimed by the firm, and that none of the rights or